IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EARL D. PHIFFER,

                    Petitioner,

  v.

GREGORY GRAMS, Warden,
Columbia Correctional Institution,

                    Respondent.

REPORT AND
RECOMMENDATION

08-cv-0384-slc

---

REPORT

      Earl D. Phiffer is serving a fifteen-year sentence for second-degree assault of a child. He has applied for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Phiffer alleges that his custody resulting from his conviction is in violation of the laws or Constitution of the United States because: 1) the state coerced the victim to testify falsely against petitioner at trial; 2) trial counsel was ineffective for failing to challenge certain jurors for cause; and 3) appellate counsel was ineffective for failing to raise on appeal the issue of trial counsel's ineffectiveness. For the reasons set forth below, I am recommending that the court deny the petition on the merits.

FACTS

      Petitioner was charged in November 2002 in the Circuit Court for Rock County with statutory rape in violation of Wis. Stat. § 948.02, based on the allegation that he had had sexual intercourse with Sarkeisha Owens, a child under the age of 16. Before trial, the prosecutor obtained and served subpoenas for Owens and her mother, Molly Harris. In open court before jury selection, he told the court that he anticipated that Owens might refuse to testify, as she had done at the preliminary hearing. Tr. of Jury Selection, Aug. 18, 2003, dkt. 12, exh. 11, at

8. In that event, he said, he would ask the court to grant her immunity, and if she still refused to testify, to find her in contempt. *Id*.

During voir dire, one venire person reported that a close relative by marriage was accused of sexual assault and that two other family members were "involved" in the mater, which was resolved privately. *Id*., at 33-34. She also stated that she had worked in the Beloit City Attorney's Office, knew quite a few Beloit police officers and was once the neighbor of a police officer who subsequently testified against Phiffer. *Id*. at 21, 46. A different venire person reported that Phiffer resembled someone who once had a very negative relationship with her daughter, but upon questioning by defense counsel, she acknowledged that Phiffer obviously was not the same person and that she could judge him fairly and impartially. *Id*., at 45. Counsel did not seek to remove or to strike either woman and both sat on the jury.

Trial began the next day. Neither Owens nor Harris was present, so the prosecutor requested and received issue bench warrants. However, the prosecutor subsequently was able to contact Harris, who agreed to come to court voluntarily. Meanwhile, a police officer from the Beloit Police Department picked Owens up at her residence and transported her to the courthouse. After about an hour recess, court reconvened. During the break, Owens had had the opportunity to consult with a lawyer whom the court had appointed to represent her. The court permitted the prosecutor to question Owens outside the jury's presence to ascertain her willingness to testify. Owens cooperated and answered the prosecutor's questions. *Id*., at 4-24.

At trial, Owens testified that she had had consensual sex with petitioner approximately 10 times in 2001 and 2002 and that petitioner was the father of her child, Breyon Phiffer, who had been born on December 4, 2002. On cross-examination, defense counsel attempted to elicit

2

testimony from Owens to the effect that she had been brought to the courthouse in police custody and was testifying under threat of contempt. *Id*., at 42-45. Ruling on the prosecutor's objection, the court decided that counsel could ask Owens whether she was testifying voluntarily, but not whether she had been threatened by anyone. The court pointed out that Owens had not asserted a Fifth Amendment privilege, so her testimony was like that of "any other witness." *Id*. at 45. In response to the question whether she had come to court voluntarily, Owens answered "No. No." *Id*. Owens's mother, Molly Harris, testified that petitioner had admitted to her that he was the father of Owens's child. After deliberating for 35 minutes, the jury returned a guilty verdict.

Petitioner filed a postconviction motion for a new trial. He contended that he was denied his right to a fair trial because 1) Harris had violated a pretrial ruling prohibiting any reference to the fact that petitioner had been in jail; 2) Harris was permitted to report what she had said in response to petitioner's statement that he thought Owens was 17 years old, namely, that he should have known she was not 17; and 3) the state had elicited unfairly prejudicial testimony from Harris identifying her grandson by the name of Breyon Phiffer, which effectively constituted a hearsay opinion that Phiffer was the father of the child. The circuit court denied the motion.

On appeal, petitioner pursued only the first two claims. In an unpublished opinion issued August 11, 2005, the court of appeals affirmed petitioner's conviction, finding that he had not been prejudiced by either of Harris's statements. *State v. Phiffer*, 287 Wis. 2d 508, 704 N.W. 2d 424 (Ct App. 2005) (Table) (unpublished disposition). The Wisconsin Supreme Court denied petitioner's petition for review.

3

Petitioner then filed a *pro se* motion for post-conviction relief pursuant to Wis. Stat. § 974.06, raising issues that had not been raised by his appellate counsel.  In the motion, petitioner alleged that his trial lawyer had been ineffective for failing to ask the court to strike for cause the juror who had been the neighbor of a Beloit police officer and the juror who said petitioner resembled someone who had sexually assaulted her daughter.  Also, he argued that his lawyer was ineffective for "acquiescing" to the trial court's refusal to allow him to cross-examine Owens about how she was arrested and brought to court or how the prosecutor had "threatened and compelled" her to testify.  Petitioner argued that his appellate lawyer had been ineffective for failing to raise these issues of trial counsel's ineffectiveness.  Finally, petitioner alleged that the trial court had abused its discretion and violated his rights under the Due Process and Confrontation Clauses when it limited counsel's ability to cross-examine Owens.  The trial court denied the motion, finding that petitioner's claims were barred by *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W. 2d 157 (1994), and further, that they had no merit.

On appeal, the Wisconsin Court of Appeals addressed petitioner's claims on the merits. It agreed with the trial court that the record disclosed no reasonable basis from which counsel could have concluded that either of the two jurors was biased.  The court reasoned:

> Neither had any connection to this case.  The first juror knew some police officers, including a witness against Phiffer, but reported no significant connection with any of them.  She reported a family connection with a sexual assault incident, but one that was not prosecuted and where she was closely related to the perpetrator.  She declared that she could be fair and impartial. The second juror reported a physical resemblance between Phiffer and someone the juror viewed very unfavorably, but acknowledged the irrelevancy of that fact and also stated that she could remain fair and impartial.  There was no reasonable basis to infer bias in the case of either juror.

*State v. Phiffer*, 2008 WI App 1, ¶5, 306 Wis. 2d 849, 743 N.W. 2d 166 (Table) (unpublished disposition), copy provided at dkt. #10, exh. 17. The court declined to address petitioner's arguments concerning the trial court's decision to limit cross-examination of Owens regarding the circumstances under which she appeared to testify, finding that the arguments were not adequately developed. *Id*. at ¶6.

The Wisconsin Supreme Court denied petitioner's petition for review on April 14, 2008.

ANALYSIS

    I. Claim 1: The State Coerced Owens To Testify Falsely Against Petitioner

Respondent contends that this court cannot consider the merits of petitioner's first claim because petitioner failed to present it to the state courts, meaning that he has either failed to exhaust or procedurally defaulted the claim. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (explaining relationship between exhaustion and procedural default doctrines). Petitioner insists that he did exhaust the claim. As proof, he points to his § 974.06 motion and briefs in the state appellate courts, wherein he argued that the trial court had abused its discretion and violated petitioner's Sixth Amendment right to confrontation when it refused to allow defense counsel to question Owens regarding the circumstances under which she was testifying.[1] However, the claim petitioner raised in the state courts is not exactly the same as the one he is raising in his habeas petition. As I read the petition and petitioner's reply to the state's

---

[1] Petitioner also contends that respondent has waived his right to argue for dismissal on procedural grounds by failing to raise the defense in a motion to dismiss. It is unnecessary to address this argument because I am recommending that the court deny Claim 1 on the merits, not on procedural grounds.

5

response, petitioner is contending that the prosecutor acted unlawfully when he threatened to ask that Owens be found in contempt of court in the event she declined to testify after being granted immunity. This is different from the claim petitioner raised in the state courts, which was not a challenge to the *prosecutor's* actions, but rather was a challenge to the *court's* refusal to allow defense counsel to question Owens about why she was testifying. Accordingly, I agree with respondent that petitioner did not fairly present Claim 1 to the state courts.

Respondent has taken a rather non-committal stance on what this omission means for petitioner. According to respondent, petitioner "may" still be able to raise the claim in state court if he has a "sufficient reason" for failing to do so in his previous motions, Wis. Stat. § 974.06(4); if so, then the claim is not exhausted.[2] If petitioner lacks a sufficient reason for failing to raise his claim in the preceding state court proceedings, says respondent, then the claim is defaulted and federal review is foreclosed unless petitioner can make the requisite showings of cause and prejudice or that a fundamental miscarriage of justice will occur if the claim is not considered. Unfortunately, respondent takes no position regarding the likelihood of petitioner succeeding in demonstrating to the state courts that he had a sufficient reason for his failure to raise his claim earlier.

Fortunately, this court need not answer the exhaustion question and the related issue of whether a stay is warranted. Under 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to

---

[2] This would mean that the petition is a "mixed" petition requiring the court to consider whether it should be stayed and placed in abeyance while petitioner exhausts the unexhausted claim in state court. *Rhines v. Weber*, 544 U.S. 269 (2005); *Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008). However, respondent offers no input on whether a stay would be appropriate in this case.

exhaust the remedies available in the courts of the State." Exhausted or not, there is no merit to petitioner's claim that the state coerced Owens unlawfully into testifying falsely against him First, petitioner has offered no evidence that Owens heard the prosecutor's statements regarding what he would do if she refused to testify: by all indications, those statements were made outside of Owens's presence. Accordingly, there is no evidence that Owens was "pressured" by those remarks. Second, none of the hypotheticals posited by the prosecutor occurred: Owens did not assert a Fifth Amendment privilege, the prosecutor never granted her immunity and Owens did not refuse to testify. Indeed, there is no evidence that Owens had a valid Fifth Amendment privilege to assert. *Hoffman v. United States*, 341 U.S. 479, 486 (witness may validly choose not to testify if her testimony would be incriminating or if it would "furnish a link in the chain of evidence" needed to prosecute her). Third, even if Owens *had* heard (or was told) what the prosecutor was proposing in the event Owens refused to testify, there was nothing unlawful about that proposal. Wisconsin law, like federal, expressly authorizes the court, on the motion of the prosecutor, to grant immunity to a witness who refuses to testify on the ground that her testimony may incriminate her. Wis. Stat. § 972.08. The statute further provides that an immunized witness who fails to testify may be held in contempt. *Id*. Thus, what petitioner characterizes as the prosecutor's unlawful "threat" was merely a recitation of what the law allowed him to do.

Finally, although Owens may have been a reluctant witness, there is absolutely no evidence that she testified falsely. The sole issue for the jury was whether petitioner had engaged in sexual intercourse with Owens when she was under the age of 16. In addition to Owens's testimony, the state introduced evidence that petitioner had admitted to Owens's mother that

7

he was the father of Owens's child and to a police officer that he had had intercourse with Owens. Although neither of these witnesses could provide specific dates on which Owens and petitioner had sex, the jury could determine from the child's birthdate and Owens's birth date that Owens and petitioner had had sex before Owens turned 16.

For the sake of completeness, I address petitioner's claim, raised in the state courts and hinted at here, that the trial court violated his Sixth Amendment right to confrontation when it restricted defense counsel's cross-examination of Owens regarding her motive for testifying. The state appellate court declined to consider this claim because it found that petitioner had not briefed it adequately. Because the Wisconsin Court of Appeals refuses routinely to consider inadequately briefed arguments, *see*, *e.g.*, *State v. Petit*, 171 Wis. 2d 627, 492 N.W.2d 633, 642 (Ct. App. 1992); *State v. Shaffer*, 96 Wis. 2d 531, 292 N.W.2d 370, 377-78 (Ct. App. 1980), the court's reliance on this procedural requirement to deny petitioner relief constitutes an independent and adequate state procedural default that bars this court from considering the merits of the claim. *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382 (7th Cir. 1990) (if state court denies claim on basis of state procedural rule that court applies regularly and consistently, federal review of claim is barred). This court can overlook the default if the petitioner shows (1) cause for the default and actual prejudice from failing to raise the claim as required, or (2) that enforcing the default would lead to a "fundamental miscarriage of justice." *Steward v. Gilmore*, 80 F .3d 1205, 1211-12 (7th Cir. 1996) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). Petitioner has not attempted to make either showing.

Even if petitioner had not defaulted this claim, petitioner would not be entitled to habeas relief. Although the Supreme Court has held that "the exposure of a witness' motivation in

testifying is a proper and important function of the constitutionally protected right of cross-examination," *Davis v. Alaska*, 415 U.S. 308, 315 (1974), it recognizes that there are limits:

> [T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

> [T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

*Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original).

In this case, the trial court did not bar petitioner completely from cross-examining Owens about her willingness to testify; it allowed defense counsel to ask her whether she was testifying voluntarily. However, the court prohibited the defense from attempting to elicit any testimony from Owens that she had been threatened or brought to court in a squad car. In this regard, the court noted that there was no evidence of any threats being made, that a lawyer had been appointed to represent Owens and that Owens had not asserted any Fifth Amendment privilege. In light of these facts, the court's limits on cross-examination were reasonable. As discussed above, the prosecutor's intention to grant Owens immunity if she claimed her Fifth Amendment rights was not unlawful or coercive and in any case, was never realized. The fact that Owens was brought to court in a squad car was the result of her decision to ignore the subpoena, not evidence of police overbearing. Finally, Owens' reluctance to testify does not tend to show that she was lying; the jury just as easily could infer that she did not want petitioner to be convicted. The court reasonably concluded that the marginal relevance of the questions petitioner wanted

to ask were outweighed by the dangers of confusing the jury and prejudicing the state unfairly. Accordingly, petitioner's right to confrontation was not violated.

## II. Claims 2 and 3: Ineffective Assistance of Counsel

Petitioner contends that his trial attorney was ineffective for failing to challenge certain jurors for cause. Because the state courts adjudicated this claim on the merits, petitioner must show that the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if the state court identifies the correct governing legal rule but unreasonably applies it to the facts of its case. *Williams*, 529 U.S. at 407. An unreasonable application of federal law is different from an incorrect application of federal law. *Id.* at 410. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that

10

application must also be unreasonable." *Id*. at 411. Claims of ineffective assistance are analyzed under *Strickland v. Washington*, 466 U.S. 668, 688 (1984), which requires petitioner to show that his lawyer's performance fell below an objective standard of reasonableness and that this alleged deficiency prejudiced him. *Suggs v. United States*, 513 F.3d 675, 678 (2008).

Here, the Wisconsin Court of Appeals did not unreasonably apply *Strickland*. An attorney's actions during voir dire are trial strategy, *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001), and as such they are "virtually unchallengeable." *Strickland*, 466 U.S. at 690. The state appellate court determined that petitioner's attorney was not deficient because there was no reason to infer from the jurors' answers that they were unable to serve impartially. As the court pointed out, the first juror knew some police officers, including Officer Wells, who was a former neighbor of hers and testified for the state. However, she denied having any significant connection with Wells or any other officer and stated that she could be fair and impartial. The second juror indicated that in spite of the resemblance between petitioner and the person her daughter had dated, she was aware they were not the same person and could decide the case impartially in spite of the resemblance. None of the answers by the jurors revealed an inability on the part of either to remain impartial. Accordingly, motions to strike for cause would have failed; therefore, counsel did not perform deficiently by failing so to move. It follows that the state appellate court reasonably applied *Strickland* in denying petitioner relief on this claim.

Finally, petitioner alleges that his appellate lawyer was ineffective for failing to raise the issue of trial counsel's ineffectiveness. Even if petitioner is correct that the claim should have been raised on direct appeal, petitioner suffered no prejudice because his claim was eventually heard--and rejected--on the merits. *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996) (ultimate

11

question of ineffective assistance of appellate counsel claim is whether, but for counsel's errors, there is reasonable probability that outcome of appeal would have been different).

## RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B), I respectfully recommend that the petition of Earl Phiffer for a writ of habeas corpus be DENIED.

Entered this 7th day of January, 2009.

> BY THE COURT:
>
> /s/
>
> STEPHEN L. CROCKER
> Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin 53701

Chambers of
STEPHEN L. CROCKER
U.S. Magistrate Judge

Telephone
(608) 264-5153

January 7, 2009

Earl D. Phiffer
Reg. No. 366323
200 E. U.S. Hwy. 14
Janesville, WI 53545-9601

Gregory M. Weber
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI 53707

Re: Phiffer v. Gram
Case No. 08-c-384-slc

Dear Counsel:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before January 27, 2009, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by January 27, 2009, the court will proceed to consider the magistrate judge's Report and Recommendation.

Sincerely,

/s/

Connie A. Korth
Secretary to Magistrate Judge Crocker

Enclosures
cc:    Honorable Barbara B. Crabb, District Judge

13

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

    (1) injunctive relief;

    (2) judgment on the pleadings;

    (3) summary judgment;

    (4) to dismiss or quash an indictment or information;

    (5) to suppress evidence in a criminal case;

    (6) to dismiss or to permit maintenance of a class action;

    (7) to dismiss for failure to state a claim upon which relief can be granted;

    (8) to dismiss actions involuntarily; and

    (9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation. Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth

with particularity the bases for these objections. An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection. Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects. The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection. The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions. The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.** *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).